UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SOO LINE RAILROAD CO.,                     CIV. NO. 12-1089 (DSD/JSM)
A Minnesota Corporation d/b/a
CANADIAN PACIFIC RAILWAY,                        ORDER

       Plaintiff,

v.

WERNER ENTERPRISES,

       Defendant.

The above matter came before the undersigned on Plaintiff's Motion for Leave to Amend Complaint [Docket No. 55]. Timothy R. Thornton, Esq. and Matthew R. Brodin, Esq. appeared on plaintiff's behalf. Anthony J. Novak, Esq. and David Linder, Esq. appeared on Defendant's behalf.

The Court, being duly advised in the premises, upon all the files, records and proceedings herein, and for the reasons described in the memorandum below, now makes and enters the following Order.

       **IT IS HEREBY ORDERED** that

Defendant's Motion for Leave to Amend Complaint [Docket No. 55] is **DENIED.**

Dated: June 4, 2013                     *Janie S. Mayeron*
                                        JANIE S. MAYERON
                                        United States Magistrate Judge

## MEMORANDUM

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arose out of a collision between a truck owned by defendant Werner Enterprises ("Werner") and driven by its employee, Dale Buzzell, and a train operated by plaintiff Soo Line Railroad Company, d/b/a Canadian Pacific Railway ("CP").  The facts as alleged in the Amended Complaint are as follows.  On March 31, 2012, Buzzell drove a Werner-owned commercial truck north on U.S. Highway 59.    Amended Complaint, ¶11 [Docket No. 32].  At approximately 3:20 a.m., Buzzell approached CP's tracks near Plummer, Minnesota.  The crossing was protected with stop lines, railroad crossing symbols, cross bucks and active signals.  Id., ¶12.  Before Buzzell reached the tracks, two CP locomotives cleared the tracks.  Id., ¶13.  The train was comprised of 116 mixed freight railcars.  Id.  Buzzell crashed his truck into the tenth car in the train and the force of the collision derailed several rail cars.  Id., ¶¶14, 15.  As a consequence, one of the cars, a tanker car, was punctured and spilled thirty thousand gallons of aromatic concentrate, a hazardous liquid, onto the ground.  Id., ¶15.  Buzzell died at the scene.  Id., ¶16.  CP directed and paid for the emergency response and remediation efforts.  Id., ¶¶17-23.  CP hired environmental experts and coordinated a cleanup plan with the Minnesota Pollution Control Agency ("MPCA").  Id., ¶¶19, 20. According to CP, "Werner did no more than send a claims adjuster with no authority to the scene."  Id., ¶18.  CP sought reimbursement for the cleanup from Werner, but Werner "spurned" CP's demand for reimbursement.  Id., ¶25.

CP sued Werner on May 3, 2012, alleging that Werner is liable for CP's cleanup costs based on theories of respondeat superior, vicarious liability and negligence.

Complaint, ¶¶26-41 [Docket No. 1]. On July 5, 2012, this Court issued the Pretrial Scheduling Order, which set August 1, 2012, as the deadline for filing any motions to amend the pleadings. [Docket No. 12]. On July 13, 2012, CP moved for summary judgment. [Docket No. 13]. On August 1, 2012, before filing its memorandum of law in support of its motion for summary judgment, CP moved for leave to amend its Complaint to add claims for nuisance and trespass. [Docket Nos. 16, 18]. On August 14, 2012, the day before this Court acted on CP's motion to amend its Complaint,[1] CP filed its memorandum in support of summary judgment. [Docket No. 23]. In this memorandum, CP contended that there were no genuine issues of material fact regarding Werner's vicarious liability for the accident and that as Buzzell's employer, Werner was liable for damages pursuant to Minn. Stat. §169.09, subd. 5a, which provides that an owner of a vehicle who consents to another's operation of that vehicle, is liable in the case of an accident. CP's Memorandum of Law in Support of Summary Judgment ("CP Sum. J. Mem."), pp. 6-8 [Docket No. 23]. CP also argued that based on the doctrine of respondeat superior, Werner was liable for Buzzell's conduct as a matter of law where Buzzell was negligent per se pursuant to Minn. Stat. §169.96, because in violation of Minn. Stat. § 169.26, he failed to yield to the CP train, which had the right of way. Id., pp. 8-13. Further, CP submitted that Werner was liable as matter of law for creating a public and private nuisance pursuant to Minn. Stat. §561.01, based on Buzzell's violation of the right-of-way law when he crashed into CP's train and caused among other damages, "the release of 30,000 gallons of aromatic concentrate into the environment and onto CP's right-of-way." Id., pp. 13-17. In a footnote, CP

---

[1] The motion to amend the Complaint was submitted on the papers.

acknowledged that it had filed a motion to add claims for nuisance and trespass and stated that no discovery was needed to establish Werner's liability for nuisance. Id., p. 13, n. 2.

On August 15, 2012, this Court granted CP's motion for leave to amend its Complaint and CP filed its first Amended Complaint ("FAC") the next day. [Docket Nos. 31, 32]. The FAC alleged six causes of action: (1) respondeat superior; (2) vicarious liability; (3) negligence by Werner; (4) declaratory judgment for contribution or indemnification (5) nuisance; and (6) trespass. FAC, ¶¶26-51. After quoting the Minnesota statute on nuisance, Minn. Stat. §561.01 ("Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance"), Werner alleged that Werner's and Buzzell's wrongful conduct created a nuisance on CP's property and right-of-way. Id., ¶¶ 45, 46. As for its trespass claim, CP alleged that Werner's truck trespassed onto CP's property and right-of-way. Id., ¶53.

Werner answered the FAC, generally denying CP's allegations and asserting among other affirmative defenses that CP's claims may be barred the emergency or unavoidable accident doctrines. Answer to Amended Complaint, Affirmative Defenses, ¶5 [Docket No. 34].

In opposition to CP's summary judgment motion, Werner asserted that the motion was premature as no discovery had been conducted, and that discovery of "why" Werner's truck collided with CP's train was highly material to defense to CP's claims in the suit, including respondeat superior, vicarious liability and nuisance. Defendant's

Opposition to Plaintiff's Motion for Summary Judgment, pp. 1-14 [Docket No. 35]. According to Werner, under the doctrine of respondeat superior, Werner is only liable if its Buzzell is liable, and "[w]here the facts excuse [his] actions, then Werner has no liability, vicarious or otherwise." Id., pp. 7, 10-12. Similarly, Werner can only be liable for nuisance if Buzzell's acts were wrongful. Id., pp. 13-14. Werner represented that it "reasonably believes discovery will reveal that the driver suffered a cardiac incident or some sort of unexpected medical condition, causing him to lose control of the truck and crash into the train." Id., p. 2.

In reply, CP submitted that intent and negligence have no bearing on its statutory, nuisance and trespass claims, and that all it needed to prove was that Werner's truck wrongfully intruded upon CP's property and caused damages. Plaintiff's Reply Memorandum in Support of Summary Judgment, p. 1 [Docket No. 37]. In other words, neither Buzzell's intent nor negligence (or "why" he caused the collision) was a prerequisite to a finding of liability under theories of respondeat superior, vicarious liability and Minn. Stat. §561.01 (nuisance) liability; rather it was "Buzzell's wrongful conduct renders [that] him and his principal liable in both nuisance and trespass." Id. pp. 1, 3-4, 6.

On January 28, 2013, District Judge David Doty denied CP's motion for summary judgment. Order. [Docket No. 45]. Judge Doty rejected CP's argument that Minn. Stat. §169.09 made Werner vicariously liable for the accident regardless of whether Buzzell was negligent, concluding that the statute imposes liability on a principle for the acts of its agent "only if the agent would be liable to the third party for that act." Id., p. 4. "As a

result, there must be a finding of liability against Buzzell before §169.09 imposes liability on Werner." Id.

With respect to CP's contention that Werner's liability stemmed from trespass, negligence per se and nuisance, Judge Doty found that under Minnesota law, intent is a required element of trespass.[2] Id., p. 5. Recognizing that Werner had submitted evidence that Buzzell had suffered a heart attack, which could negate any intent to cause the accident and the ultimate trespass, Judge Doty determined there was a genuine issue of material fact as to whether Buzzell had the requisite intent to establish a trespass. Id., pp. 5-6.

Judge Doty also denied summary judgment on CP's negligence per se claim, which was based on CP's theory that violation of a Minnesota traffic statute, Minn. Stat. §169.26, constituted negligence per se. Id., p. 6. Judge Doty first noted that violations of traffic statutes "shall not be negligence per se but shall be prima facie evidence of negligence only." Id. (quoting Minn. Stat. §169.96 (b)). Therefore, even if CP could prove that Buzzell violated a traffic statute, Werner would still have the opportunity to submit evidence "tending to show a reasonable ground for such violation." Id. (quoting Olson v. Duluth, M.&I.R. Ry. Co., 5 N.W.2d 492, 496 (Minn. 1942)).

As for CP's nuisance claim, Judge Doty observed that to be liable in nuisance, a defendant must engage in "'some kind of conduct. . .which is wrongful.'" Id. (citation

---

[2]      Under Minnesota law, "a trespass is committed where a plaintiff has the right of possession to the land at issue and there is a wrongful and illegal entry upon such possession by defendant." Johnson v. Paynesville Farmers Union Coop. Oil Co., 817 N.W.2d 693, 701 (Minn. 2012) (internal quotation marks and citations omitted). Trespass is an intentional tort. Id.

omitted).[3]  To prove wrongful conduct, "a plaintiff must show [that] the defendant intentionally interfered with the use and enjoyment of the [plaintiff's] land.  Id., p. 8 (quoting Fagerlie v. City of Willmar, 435 N.W.2d 641, 643 (Minn. Ct. App. 1989)). However, wrongful conduct may also be shown through "negligence, ultrahazardous activity, violation of a statute or some other tortious activity."  Id.  CP argued that Buzzell's alleged violation of the railroad right-of-way statute provided the necessary "wrongful conduct."  Id.  Judge Doty disagreed, finding that CP's effort to support its "wrongful conduct" allegation on Buzzell's violation of Minnesota's railroad right-of-way statute (Minn. Stat. §169.26) failed because "the violation of a traffic statute may be excusable in some instances."  Id.  At this stage of the proceedings, a reasonable jury could conclude that there was no violation of a traffic statute and, consequently, no wrongful conduct to create a nuisance.  Id., p. 9.  Therefore, Judge Doty denied summary judgment on that claim as well.  Id.

---

[3]     Minnesota law defines "nuisance" as:

> Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.

Minn.Stat. § 561.01.  This statute has been interpreted to require harm to the plaintiff and wrongful conduct on the part of the defendant.  Highview N. Apartments v. County of Ramsey, 323 N.W.2d 65, 70 (Minn. 1982).  "This wrongful conduct varies and may at times be characterized as intentional conduct, negligence, ultrahazardous activity, violation of a statute or some other tortious activity."  Id., p. 71.

On April 11, 2013, CP filed the instant motion for leave to amend the FAC. [Docket No. 55]. CP contended that its proposed Second Amended Complaint ("SAC") did not add new facts or claims but would merely "clarify" the already-pled nuisance and trespass claims by referencing Werner's duties under the Resource Conservation and Recovery Act ("RCRA"). Plaintiff's Memorandum of Law in Support of Motion to Amend the Complaint ("Pl. Mem."), p. 1 [Docket No. 58].

In the Background section of the SAC, Werner sought to add that Buzzell's smashing of his truck into CP's tank car "caused or contributed to disposal of hazardous substances that presented an imminent and substantial endangerment to health and the environment." Affidavit of Matthew R. Brodin ("Brodin Aff."), Ex. 2 (redlined version of SAC), ¶14; see also ¶18 ("Further by crashing into the train Werner violated federal law by causing or contributing to the disposal of hazardous substances at the derailment site. That disposal presented an imminent and substantial endangerment to health and the environment. 42 U.S.C. §6973.") [Docket No. 59-1].

In its nuisance count (Count V), Werner requested permission to add the following:

> [B]y crashing into CP's train, Werner caused or contributed to the improper disposal of the hazardous substances contained in the punctured tanker. That disposal and the continuing disposal associated with the hazardous substances' uncontrolled presence on the land presented an imminent and substantial endangerment to health and the environment. The [RCRA] . . . subjected Werner to strict liability for remediating the imminent and substantial endangerment to health and the environment caused by the illegal disposal. Werner's violation of RCRA by causing or contributing to the improper disposal of hazardous substances, and unjustified and illegal refusal to abate the imminent and substantial threat to health and the

8

environment, created a nuisance on CP's property and the neighboring land.

Werner's violation of RCRA, refusal to comply with RCRA obligations, and failure to discharge RCRA liability were wrongful and constituted a nuisance.

Id., ¶¶47, 48.

In its trespass count (Count VI), CP sought to allege:

[B]y crashing into the train, Werner caused or contributed to the illegal disposal on CP's property of hazardous substances from the punctured tanker. That disposal presented an imminent and substantial endangerment to human health and the environment. RCRA proscribed such disposal and subjected Werner to strict liability for removing the hazardous substances that the initial and continuing illegal disposal placed on CP's property. By causing or contributing to the illegal and continuing disposal and refusing to remove the hazardous substances that Werner disposed of on CP's property as required by law, Werner trespassed on CP's property.

Id., ¶53.

CP argued that the Court should grant its motion in light of the liberal standard governing amendments to pleadings. Id., p. 4. Further, no additional discovery[4] would be required regarding this "clarification" and Werner would not be prejudiced by the amendment. Id., pp. 5, 9-10. CP also contended that the amendment was not futile because Werner clearly violated the RCRA, which imposes strict liability on "any person who is contributing or who has contributed to the disposal of hazardous substances that

---

[4]     The Second Amended Pretrial Scheduling Order provided that fact discovery closed on March 1, 2013 (except for the Rule 30(b)(6) deposition of Werner which was permitted to be taken on or before March 21, 2013), all expert discovery regarding liability closed June 1, 2013 and all expert discovery closed on June 15, 2013. [Docket No. 48].  As for expert disclosures bearing on liability, CP was required to disclose its experts' reports by March 1, 2013, Werner was required to disclose its experts' reports by May 1, 2013, and CP's rebuttal expert reports were to be disclosed by May 15, 2013.

may present an imminent and substantial danger to health or environment." Id., p. 5 (quoting 42 U.S.C. §6973). CP explained that the proposed amendment did not seek relief under the RCRA, but sought to render the violation of the RCRA the "wrongful conduct" that would support CP's existing nuisance and trespass claims. Id., pp. 7-9.

The Second Amended Pretrial Scheduling Order provided that the deadline to filing motions for leave to amend the pleadings to add claims or was August 1, 2012. CP explained that it did not bring its motion earlier because it waited "months" for Judge Doty's summary judgment ruling and then this Court's "busy schedule" forced CP to wait "months" after Werner "refused to cooperate."[5] Pl. Mem., p. 10. CP indicated that if the Court denied its motion for leave to amend it would "simply file a new action." Id., p. 11. CP concluded by stating that it would be prejudiced if its motion for leave to amend were denied. According to CP,

> [it] would be significantly disadvantaged by the banishment of RCRA-based allegations of wrongful conduct from this action. The facts about what Werner did and failed to do are not in dispute. The only question raised by the amendment is whether spurning RCRA duties is sufficiently wrongful to subject Werner to nuisance and trespass liability. To ensure the dispute is determined on the merits, leave to amend should be granted.

Id., pp. 11-12.

---

[5] CP did not say how Werner refused to cooperate, but the Court assumes this statement refers to Werner's refusal to consent to the amendments without the need for a motion. As for CP's statement that it was forced to wait "months" after Werner refused to cooperate, the Court notes that on March 6, 2012, CP sent Werner a copy of the SAC and asked Werner to sign off on it. Meet-and-Confer Statement [Docket No. 57]. On March 20, 2013, Werner's counsel informed CP's counsel that Werner would not consent to the amendments. Id. On April 11, 2013, CP scheduled the instant motion, which was heard on May 1, 2013.

Werner opposed CP's motion, arguing that the amendment was an entirely new statutory claim—one that CP was attempting to assert long after the deadline for amending pleadings and after the close of discovery. Defendant's Opposition to the Plaintiff's Motion to Amend the Complaint ("Def. Mem."), p. 1 [Docket No. 66]. Werner rejected CP's efforts to characterize the amendments as a "clarification," and argued it was nothing more than an effort to circumvent the Court's scheduling order. Id., p. 3. Under the Rule 16 standard for modification of a scheduling order, CP was required to show that it had been diligent in attempting to meet the deadlines and that the opposing party would not be prejudiced. Id., p. 4. CP could show neither. Id.

Werner submitted that it had at least three defenses to a RCRA claim, development of which would be foreclosed by CP's late motion, and would cause Werner prejudice. First, the RCRA applies only to parties "with authority to control waste disposal" at the accident site. Id., p. 6. Here, there is substantial question as to whether CP can prove Werner had the requisite "authority to control." Id. Second, a party can be liable under the RCRA only if the hazardous waste presents "an imminent and substantial endangerment to health or the environment." Id. (citing 42 U.S.C. § 6973). Therefore, CP would have to prove that the release presented "an imminent and immediate danger" within the meaning of the RCRA. Id., p. 7. Third, even if the disposal created an "imminent and immediate danger," the RCRA imposes liability only if the danger exists at the time the plaintiff asserts a RCRA claim. Id. In other words, the RCRA provides a remedy to "ameliorate present or obviate the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts." Id. (quoting Meghrig v. KFC Western, Inc., 516 U.S. 479, 486 (1996)). If the Court granted

CP's untimely motion, Werner would be prejudiced because it would not be able to develop these defenses to the new claims.  Id., p. 6.

Conversely, had CP been timely in its amendment, Werner would have pursued additional discovery, including examining CP's witnesses about the applicability of RCRA to the case, CP's understanding of its responsibilities under the RCRA, and CP's personnel and contractors' information about conditions at the site.  Id., p. 8. Additionally, Werner would have presented its own witnesses to contest that Werner had the "authority to control waste disposal"—a requirement under RCRA—and its own experts to address this issue and whether an "imminent and substantial endangerment" existed at the time of the RCRA claim.  Id., pp. 8-9.

Werner contended that CP's motion should also be denied under Rule 15, because the proposed amendments were both futile and prejudicial.  Id., p. 9.  For starters, Werner rejected CP's threat to bring a new lawsuit if the Court did not allow the amendments, noting that parties cannot bring a second lawsuit on the same facts based on theories that "were or could have been raised."  Id., pp. 9-10 (quoting San Remo Hotel, L.P. v. County of San Francisco, 545 U.S. 323, 336 fn. 16 (2005)).  Werner then argued that the amendments were futile because the RCRA cannot serve as the basis for nuisance liability.[6]  Id., p. 10.  Under Minnesota law, violation of only two types of statutes can support a nuisance claim:  (1) statutes that prescribe a course of conduct and establish a standard of care; and (2) statutes that expressly state that a violation of

---

[6]      Werner also submitted that its futility and prejudice arguments were equally applicable to CP's trespass claim, noting that in light of Judge Doty's holding that "intent is required for trespass liability" under Minnesota law, (Docket No. 45 at 5), adding a strict liability claim under the RCRA or otherwise, could not establish the requisite "intent."  Def. Mem., p. 13, n. 4.

their terms constitutes a nuisance.  Id., pp. 11-12.  Consequently, for CP to establish "wrongful conduct" based on the violation of a statute, it must show that Werner violated a standard of care described in the statute without reasonable excuse or justification, or that the statute provides for nuisance liability.  Id., pp. 12-13.  CP can do neither because the RCRA is an enforcement statute that neither defines a standard of care nor contains any provisions stating that a violation of the RCRA constitutes a nuisance.  Id., p. 13.  Additionally, RCRA's citizen suit provision only allows for injunctive relief and does not provide for money damages for past cleanups.  Id., p. 14 (citing 42 U.S.C. § 6972).  Werner maintained that CP should not be able to recover damages based on a statute that does not permit damages for past clean-up costs.  Id., pp. 14-15.  In sum, CP should not be permitted to circumvent the statutory scheme of the RCRA by re-casting a RCRA claim as a nuisance claim.  Id., p. 15.

In reply, CP again reiterated that it was not adding any new causes of action; rather it was only "augmenting" the legal basis for its allegation that Werner had engaged in wrongful conduct.  Plaintiff's Reply Memorandum in Support of Motion to Amend the Complaint ("Pl. Reply"), p. 1 [Docket No. 68].

As for good cause under Rule 16, CP contended that its "'good cause' cup brimeth over."  Id.  CP explained:

> The pendency of CP's summary judgment motion drove leave to amend request timing.  While the parties waited months for Judge Doty's Rule 56 adjudication, for all practical purposes this litigation was on hold.  Until this Court decided whether liability was a question of fact or law, amending the complaint made little sense.  Shortly after the summary judgment denial, CP provided Werner with the complaint that is the subject of this motion. (Brodin Aff. Ex. 3).  Werner waited two weeks before declining to stipulate to the amendment. (Id. Ex. 5).  CP then obtained the first

available hearing date for this motion. Werner had the amended complaint just eleven months after crashing into CP"s train. In a forum where lawsuits go on for years, that notice was certainly prompt.

Id., pp. 1-2.

CP rejected Werner's argument that it would be prejudiced by its inability to conduct discovery on whether Werner "contributed to" the disposal by virtue of having the "authority to control waste disposal." Id., pp. 2-3. According to CP, the Eighth Circuit has interpreted the words "contribute to" in the RCRA to mean "to have a share in any act or effect," which clearly Werner did. Id., p. 3 (citing United States v. Aceto Ag. Chem. Corp., 872 F.2d 1373, 1383-84 (8th Cir. 1989)). Further, even if "authority to control" was the standard, CP contended that no further discovery needed to be conducted on that issue as "Werner knows as well as anyone what happened and why." Id. CP also scoffed at Werner's contention that there could be a fact dispute for which discovery was needed on whether 30,000 gallons of spilled aromatic concentrate—a known carcinogen—represented "imminent and substantial endangerment." Id., pp. 3-4. According to CP, "no amount of discovery can moot the obviousness of the imminent hazard created by the collision." Id., p. 4.

CP responded to Werner's futility argument by insisting that the amendment did not allege a statutory cause of action, and the RCRA did not preclude common law claims of nuisance and trespass. Id., pp. 4-6. To the contrary, just as violations of other statutes can be used to establish wrongful conduct to support a claim of nuisance or trespass—even when these statutes provide no damages remedy—so too can the RCRA. Id., pp. 6-7.

At the motion hearing, this Court asked CP's counsel why CP did not add the RCRA claims when CP first moved for leave to amend its Complaint on August 1, 2012. Counsel responded that CP "should have."

## II. LEGAL STANDARDS

### A. <u>Rule 16 Modification of Scheduling Order</u>

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings once a scheduling order's deadline for amendments has passed. Pursuant to Rule 16(b), a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Similarly, Local Rule 16.3(b) states that a party who moves to modify a scheduling order must: (1) establish good cause for the proposed modification, and (2) explain the proposed modification's effect on any deadlines.[7] Scheduling orders pursuant to Rule 16(b)(1) "assure[] that at some point both the parties and the pleadings will be fixed, . . ." Rule 16(b), Federal Rules of Civil Procedure, advisory committee notes—1983 Amendment; <u>see</u> <u>also</u> <u>Marmo v. Tyson Fresh Meats, Inc.</u>, 457 F.3d 748, 759 (8th Cir. 2006) ("Adherence to [scheduling order] deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.'") (quoting Fed. R. Civ. P. 1).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." <u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 717 (8th Cir. 2008) (quoting <u>Rahn v. Hawkins</u>, 464 F.3d 813, 822 (8th Cir. 2006)). "The

---

[7]    In addition to this requirement, a party moving to modify a scheduling order's discovery deadline must also: "(1) describe what discovery remains to be completed; (2) describe the discovery that has been completed; (3) explain why not all discovery has been completed; and (4) state how long it will take to complete discovery." Local Rule 16.3(c).

'exacting' standard set by Rule 16(b) requires that a moving party first make the requisite good cause showing.  Shukh v. Seagate Tech., LLC, Civ. No. 10-404 (JRT/JJK), 2013 WL 53835 at *3 (D. Minn. Jan. 3, 2013) (citing E.E.O.C. v. Hibbing Taconite, 266 F.R.D. 260, 265 (D. Minn. 2009)).  While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, a court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.  See Morrison Enter., LLC v. Dravo Corp., 638 F.3d 594, 610 (8th Cir. 2011) (affirming district court's denial of motion for leave to amend on ground that a tactical choice not to pursue a claim earlier did not show diligence); Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling] order.")

In short, "Rule 16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend." Scheidecker v. Arvig Enters., 193 F.R.D. 630, 632 n. 1 (D. Minn. 2000) (citations omitted).  "It hardly bears mentioning. . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief."  Hibbing Taconite, 266 F.R.D. at 265; see also C.H. Robinson Co. v. Zurich American Ins. Co., Civ. No. 02-4794 (PAM/RLE), 2004 WL 1765320 at *1 (D. Minn. Aug. 05, 2004) ("Carelessness does not excuse dilatoriness and 'offers no reason for a grant of relief.'") (quoting North Star Mut. Ins. Co. v. Zurich Ins. Co., 269 F. Supp.2d 1140, 1144 (D. Minn. 2003));

Rosati v. Cleveland-Cliffs, Inc., 259 F. Supp.2d 861, 875 (D. Minn. 2003) ("'[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'") (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340-41 (2nd Cir. 2000) (a party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation) (citation omitted).

**B.    Rule 15 Motions for Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."   The court has the discretion to determine whether to grant leave to amend.  See e.g., Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).   In construing this rule, the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded to test his claim on the merits.  In the absence of any apparent or declared reasons—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave should, as the rules require 'be freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962); see also Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).  Delay is "undue" when "it places an unwarranted burden on the Court or when the plaintiff has had previous opportunities to amend."  Estate of Olivia ex. rel. McHugh v. New Jersey, 604 F.3d 788, 803 (3d Cir. 2010) (citation omitted).

"Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the Twombly pleading standard…." See Zutz v. Nelson, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted)); In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (denying a motion to amend on the basis of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); United States ex. rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim…"), cert. denied 536 U.S. 925 (2002); DeRoche v. All American Bottling Co., 38 F. Supp.2d 1102, 1106 (D. Minn. 1998) ("Although we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on ground of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim on which relief can be granted.")

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. V. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations

in their complaint." <u>Ossman v. Diana Corp</u>., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).

With these standards in mind, the Court turns to CP's motion for leave to amend its FAC.

## III. DISCUSSION

### A. CP Has Not Established Good Cause Under Rule 16 and Local Rule 16.3 for its Belated Motion to Amend

CP's attempt to evade the scheduling order's August 1, 2012 deadline for amendment of the pleadings by calling the amendments a "clarification" is sophistry. Although CP does not seek relief under the RCRA, the amendments accuse Werner of violating the RCRA (SAC, ¶¶47, 48, 53) and present Werner with new and unexpected fronts on which it will have to defend the lawsuit. CP has presented a motion for leave to amend the pleadings that was untimely. Therefore, the Court must determine if CP should be excused for its untimeliness.

As noted, the primary consideration in determining if there is good cause to modify a scheduling order is the diligence of the party seeking the modification in meeting the requirements of the order. <u>Sherman</u>, 532 F.3d at 717. As counsel for CP acknowledged at the hearing, CP had all of the facts necessary to assert a RCRA claim at least as early as CP's first motion to amend on August 1, 2012, and certainly long before Judge Doty denied CP's motion for summary judgment. Therefore, CP's explanation that it was proper to delay bringing its motion to amend until after Judge Doty ruled on its motion for summary judgment is rejected. CP's late effort to amend was not based on any newly discovery evidence (after all, it has maintained all along that no discovery is needed from the inception of this case); instead it is apparent that

CP crafted the RCRA theory to overcome Judge Doty's denial of its other statutory arguments to support its nuisance and trespass claims.

Further, on February 22, 2013, this Court held an informal motion via telephone with counsel to address modifying the scheduling order to allow for CP's Rule 30(b)(6) deposition of Werner after the fact discovery deadline of March 1, 2013, and to extend the various deadlines for expert disclosures and completion of expert discovery. [Docket No. 46].  Based on that informal conference, the Court issued the Second Amended Scheduling Order, which extended fact and expert discovery deadlines.  CP did not seek at that time, as it clearly could have, to modify the scheduling order's August 1, 2012 deadline for motions to amend the pleadings or to permit its out-of-time motion to amend the FAC.

On these facts, the Court concludes that CP was not diligent in attempting to meet the requirements of the pretrial scheduling order, and the motion to amend is denied on that basis.

### B.      CP's Motion to Amend Does Not Meet the Requirements of Rule 15

This Court also finds the motion must be denied because CP unduly delayed in bringing the motion, Werner would be prejudiced by the amendment, and the amendment is futile.

### 1.      CP Unduly Delayed in Seeking Leave to Amend

For the same reasons that the Court concluded that CP's motion was untimely, the Court also finds that CP unduly delayed in seeking leave to amend and the motion should be denied for that reason as well.  See Foman, 371 U.S. at 182.  A cornerstone of CP's argument in favor of its motion was that Werner would not be prejudiced if the

motion was granted because "when the facts upon which the amendment is based are known and available to the parties, amending the complaint causes no prejudice" and Werner "cannot feign ignorance about federal environmental law. . . ." Pl. Mem., p. 10. But if that is true for Werner, it is equally true for CP. As evidenced by the tanker of hazardous liquid which Buzzell struck, CP's business entails the transportation of highly hazardous materials. CP cannot declare (nor did it) that its lack of familiarity with federal environmental law, including the RCRA, caused or contributed to its delay in seeking leave to amend.[8] Nothing prevented CP from adding the RCRA claims when it moved to amend the first time and CP had no justification for not doing so at that time. For these reasons, the Court concludes that CP unduly delayed in seeking leave to amend.

## 2. Allowing the Amendment Would Prejudice Werner

This Court also concludes that allowing CP to amend its FAC at this late date would prejudice Werner because Werner would be forced to prepare new defenses to the suit—defenses that would inevitably involve additional fact and expert discovery. Under the operative scheduling order, fact discovery closed on March 1, 2013 (except for the Rule 30(b)(6) deposition of Werner which was permitted to be taken on or before March 21, 2013); CP was required to disclose its experts' reports by March 1, 2013; Werner was required to disclose its experts' reports by May 1, 2013; CP's rebuttal expert reports were to be disclosed by May 15, 2013; and all expert discovery regarding

---

[8] The Court notes that CP's lead counsel, Mr. Thornton, represented CP in two cases involving the 2002 derailment of a CP freight train near Minot, North Dakota during which 220,000 gallons of anhydrous ammonia were released. See <u>Lundeen v. Canadian Pacific Ry. Co.</u>, 447 F.3d 606 (8th Cir. 2006); <u>Lundeen v. Canadian Pacific Ry Co.</u>, 532 F.3d 682 (8th Cir. 2008).

liability closed June 1, 2013. [Docket No. 48]. Despite Judge Doty's decision on January 28, 2013, and the March 1, 2013 deadline for fact discovery, CP did not approach Werner about its proposed amendment until March 6, 2013, and did not file its motion to amend until April 11, 2013, well after the end of fact discovery and shortly before Werner's expert reports on liability were due. Nevertheless, at the motion hearing, this Court asked Werner's counsel about the additional discovery Werner believed would be necessary if the Court allowed the amendments, as at first blush it appeared to the Court that additional discovery, if any, would be taken from Werner (which Werner could conduct internally), and not from CP. Werner's counsel responded that had it known about CP's reliance on the RCRA to support its nuisance and trespass claims, Werner would have conducted discovery on CP's role in planning for and responding to hazardous spills. Further, because "imminent and substantial endangerment" is a requisite to liability under the RCRA, Werner would have conducted discovery on the fact question of whether the spill constituted an imminent danger, particularly in light of the speed with which the cleanup was conducted. In this regard, Werner pointed to a response work plan prepared by CP's consultant within one week of the incident.[9] The Response Action Workplan indicated that of the 27,000 gallons of aromatic concentrate that spilled, 12,000 were recovered within the week. Therefore, there was a fact question as to the "imminent" nature of the harm. In addition, although CP chided Werner for not presenting any expert affidavits regarding the imminent endangerment created by the spill, (Pl. Reply, p. 4), at the motion hearing, Werner's

---

[9]      A copy of the Response Action Workplan was provided to the Court at the motion hearing.

counsel stated that Werner had not done so because RCRA had never been a part of the case.

To address Werner's need for discovery, CP changed course at the hearing. Instead of holding fast to the position it has taken since the inception of the case—no fact discovery was needed on liability—CP's counsel stated that if the Court allowed the amendment, CP would agree to re-opening discovery.

There is no question that CP's belated motion to amend—brought after the close of fact discovery and shortly before Werner's expert reports on liability are due—is prejudicial to CP. It is true that prejudice to the non-moving party that results from allowing a late amendment to the pleadings can be mitigated by re-opening discovery and amending the pretrial scheduling order. On the other hand, the Court is mindful that the parties are entitled to rely on the Court's scheduling orders for certainty regarding "the point [at which] both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee note to 1983 amendment. See also Bradford, 249 F.3d at 809 ("As a vehicle to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them."). Had CP provided a reasonable explanation for its delay in asserting its new claim, this Court might have been more receptive to CP's offer of re-opening discovery. But, in light of the facts and circumstances here, the Court concludes that it is not appropriate to re-open discovery to ameliorate the prejudice that will result from allowing the amendment, particularly where CP has insisted from the get-go that no discovery was needed to address liability in this case, and where it was CP's own unjustifiable lack of diligence and significant delay in bringing this motion that created the prejudice in the first place.

### 3. The Proposed Amendments are Futile

#### a. <u>CP Failed to Plead Any Facts Supporting the Application of the RCRA to the Accident</u>

The RCRA provides, in relevant part:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf-
>
> (1)(A) against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or
>
> (1)(B) against any person, including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

42 U.S.C. § 6972(a)(1)(A) and (B).

"'RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.'" <u>Abreu v. United States</u>, 468 F.3d 20, 29 (1st Cir. 2006) (quoting <u>Meghrig v. KFC Western, Inc.</u>, 516 U.S. 479, 483 (1996)).  The RCRA was enacted to address "the overriding concern of . . . the effect on the population and the environment of the disposal of discarded hazardous wastes— those which by virtue of their composition or longevity are harmful, toxic or lethal."  H.R. Rep. No. 94-1491, pt. 1 at 3 (1976), <u>see</u> <u>also</u> <u>Ecological Rights Found. v. Pacific Gas & Elec. Co.</u>, 713 F.3d 502, 515 (9th Cir. 2013) ("Congress enacted RCRA to 'eliminate[ ] the last remaining loophole in environmental law' by regulating the 'disposal of discarded materials and hazardous wastes.' H.R. Rep. No. 94–1491(l), at 4 (1976),

reprinted in 1976 U.S.C.C.A.N. 6238, 6241. RCRA was specifically designed to address the 'waste disposal problem,' <u>Am. Mining Cong. [v. United States Environmental Protection Agency]</u>, 824 F.2d at 1186, which was, at base, the high 'volume of waste being generated and the capacity to dispose of that waste in the traditional manner,' H.R. Rep. No. 94–1491(I), at 9. Accordingly, RCRA covers 'waste by-products of the nation's manufacturing processes,' as well as manufactured products 'themselves once they have served their intended purposes and are no longer wanted by the consumer. For these reasons the term discarded materials is used to identify collectively those substances often referred to as industrial, municipal or post-consumer waste; refuse, trash, garbage and sludge.' <u>Id.</u> at 2").

As a threshold matter, CP has completely failed to allege any facts to support that the accident and release or duty for clean-up comes within the RCRA's purview. The RCRA is not a "catch all" statute governing spills of hazardous <u>substances</u>. The RCRA was enacted to address the problems associated with the disposal of hazardous or solid <u>waste products</u>. But CP did not allege in the SAC that Werner failed to clean up hazardous or solid wastes. To the contrary, the SAC is replete with references to the liquid which spilled out from the rail tanker as a "hazardous substance." Brodin Aff. Ex. 2, SAC ¶¶14, 18, 47, 53. CP's motion for summary judgment called the aromatic concentrate a "hazardous liquid." CP Sum. J. Mem., p. 4. In fact, in its motion to amend, CP argued that the RCRA governs "hazardous substances," although later acknowledging that the statute itself refers to "hazardous waste." Pl. Mem., pp. 5-6.

"Hazardous substances are distinct from hazardous wastes . . . Hazardous wastes are defined in regulations promulgated pursuant to [RCRA] as either specific

listed wastes or wastes that contain hazardous substances at certain concentrations."
Diverse Real Estate Holdings Ltd. P'ship. v. International Mineral & Chem. Corp., Civ.
No. 91-8090, 1995 WL 110138 at *9, fn. 1 (N.D. Ill Mar. 13, 1995). The statutory
definition of "hazardous waste" references "solid waste." 42 U.S.C. §6903(5) ("The term
'hazardous waste' means 'solid waste'"). Hazardous waste is a subset of "solid waste."
The term "solid waste" is defined as "any discarded material that is not excluded under
[other regulations]. 40 CFR §261.2. A "discarded material" is any material that is
abandoned, recycled, considered inherently waste-like or a military munition. 40 CFR
§(a)(2)(i) (A-D). The regulation goes on to state that materials are solid waste if they
are abandoned by being disposed of, burned or incinerated or accumulated, stored or
treated before or in lieu of being abandoned by being disposed of, burned or
incinerated. 40 CFR §261.2(a)(2)(i)(B); see also 42 U.S.C. §6901(a)(2) (referring to
"scrap, discarded and waste materials"). "The plain meaning of 'discard' is to 'cast
aside; reject; abandon; give up." Ecological Rights Found., 713 F.3d at 515
(interpreting "discarded" within the meaning of RCRA). RCRA defines "disposal" as the
"discharge, deposit, injection, dumping, spilling, leaking or leaking, or placing any solid
waste or hazardous waste into or on any land or water. . . ." 42 U.S.C. 6903(3)
(emphasis added).

In connection with its Reply Memorandum, CP submitted the affidavit of John
Giebenhain, an environmental engineer at CP. Affidavit of John Giebenhain
("Giebenhain Aff.") [Docket No. 69]. According to Giebenhain, the MPCA designated
the soil and liquid affected by the spill to be a "characteristic hazardous waste" requiring
CP to follow RCRA guidelines for its cleanup. Id., Ex. B (MPCA Office Memorandum

dated April 6, 2012).  [Docket No. 69-1].  But the MPCA Memorandum does not once reference the RCRA or its corresponding regulations.  Id.  The toxicity and ignitability of the spill was considered under Minn. Rules pt. 7045.0131, subpts. 2-7.  Id.  Further, the MPCA stated "the soil and water will not be considered a hazardous waste if treated on site to remove the characteristics and properly managed in accordance with the MCPA approved remediation plan."  Id. (emphasis added).  In other words, the Giebenhain Affidavit and exhibit do not actually state that the material is hazardous waste within the meaning of the RCRA.  Likewise, that the cleanup was being conducted in accordance with RCRA standards does not clarify the application of RCRA to this incident.

In summary, by referencing hazardous substances and making no mention of wastes, much less hazardous waste products or solids, the SAC does not invoke the RCRA and accordingly, is futile.

> b.  CP Failed to Plead a Cognizable Claim Under the RCRA Citizen Suit Provision[10]

Congress delegated to the Environmental Protection Agency primary authority to implement and enforce the RCRA.  City of Chicago v. Environmental Def. Fund, 511 U.S. 328, 331 (1994) (citing 42 U.S.C. §§ 6921-6934).  Additionally, the RCRA allows a citizen to bring a suit pursuant to 42 U.S.C. § 6972(a)(1)(B).  The RCRA's citizen suit

---

[10]  It is true that CP has not alleged in the SAC a separate count alleging that Werner violated the RCRA.  But this may be nothing more than semantics.  Within its nuisance claim, CP alleged "Werner's violation of RCRA by causing or contributing to the improper disposal of hazardous substances, and unjustified and illegal refusal to abate the imminent and substantial threat to health and the environment, created a nuisance on CP's property and the neighboring land."  SAC, ¶47 (emphasis added). Further, CP alleges "Werner's violation of RCRA, refusal to comply with RCRA obligations, and failure to discharge RCRA liability were wrongful and constituted a nuisance."  SAC, ¶48 (emphasis added).  Therefore, without seeking a remedy under the RCRA in a separate count, CP has, in fact, alleged that Werner violated the RCRA.

provision authorizes a civil action to <u>enforce</u> a regulation or permit that a person or entity is violating; <u>restrain</u> a person who has contributed to the transportation or handling of hazardous waste, or <u>require</u> a person to take remediation action.  42 U.S.C. § 6972(a) (emphasis added).  Only prospective relief is available under this provision. <u>Tyco Thermal Controls LLC v. Redwood Indus</u>., Civ. No. 06-7164, 2010 WL 3211926 at *19 (N.D. Cal. Aug. 12, 2010).  The RCRA does not allow for the recovery of present and future costs associated with established remediation activities "that are in place and taking place, because those costs can only be characterized as damages that are not recoverable under [RCRA]."  <u>Keller Transport, Inc. v. Wagner Enter., LLC</u>, 873 F. Supp.2d 1342, 1352 (D. Mont. 2012).  The Act "undisputedly does not provide a remedy for recovery of damages and cleanup costs."  <u>Id.</u>; <u>Meghrig</u>, 516 U.S. at 488 ("Section 6972(a) does not contemplate the award of past cleanup costs.").  In sum, the citizen suit provision was "designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts."  <u>Id.</u> at 486.

To invoke the framework contemplated by the RCRA, "[a] plaintiff must establish three things . . . : (1) the defendant has been or is a generator or transporter of solid or hazardous waste, or is or has been an operator of a solid or hazardous waste treatment, storage or disposal facility;[11] (2) the defendant has "contributed" or "is contributing to" the handling, storage, treatment, transportation, or disposal of solid or

---

[11]     The Court questions how Werner, whose employee crashed into a rail car owned by another and filled with allegedly hazardous liquid, could ever be deemed to be "a generator or transporter of solid or hazardous waste, or is or has been an operator of a solid or hazardous waste treatment, storage or disposal facility," but this is not an argument that was made to the Court.

hazardous waste; and, (3) the solid or hazardous waste in question may present an imminent and substantial endangerment to health or the environment. Ecological Rights Found., 713 F.3d at 514 (citing 42 U.S.C. § 6972(a)(1)(B)) and Prisco v. A & D Carting Corp., 168 F.3d 593, 608 (2d Cir.1999)); see also, Keller Transport, Inc., 873 F. Supp.2d at 1351 (finding the claimant must plead that the hazardous waste disposal presents on ongoing and imminent and substantial threat to health or the environment and that the defendant is obligated to clean-up the spill pursuant to RCRA); Northern Calif. River Watch v. Honeywell Aerospace, 830 F.Supp. 2d 760, 769-771 (N. D. Cal. 2011) (plaintiff alleged sufficient facts to state a claim for relief under the citizen suit provision of the RCRA by alleging that defendants were responsible for the discharge of hazardous waste into soils, groundwater and surface waters that remain high above allowable limits and a public danger was created by the discharge. Plaintiffs pled facts to support that danger was current because high levels of toxins remained in the soils and water); Murtaugh v. New York, 810 F. Supp.2d 446, 475 (N.D.N.Y. 2011) (complaint that states summarily that defendants "have contributed or are contributing to the handling, storage, treatment, transportation or disposal of solid or hazardous waste" insufficient under Rule 12(b)(6)).

At the motion hearing, CP argued that pursuant to Aceto, the concept of "contributed to" the disposal of hazardous waste under the RCRA is quite broad and encompasses Buzzell's actions when he smashed into CP's tanker. Aceto, 872 F.2d at 1383 ("The relevant legislative history [of RCRA] supports a broad, rather than a narrow, construction of the phrase 'contributed to'" and rejecting district court's finding that RCRA requires an explicit allegation that the defendants had authority to control

waste disposal). But even assuming that Werner "contributed to" the disposal, the RCRA is more exacting in its requirement. A plaintiff must show that the defendant has "contributed to" or is "contributing to" the handling, storage, treatment, transportation or disposal of <u>solid or hazardous waste</u>. <u>Ecological Rights Found.</u>, 713 F.3d at 514. Even assuming CP had pled facts to support the requirement of "disposal" of a "<u>solid or hazardous waste</u>," which as discussed above, it did not, no specific facts were pled in the SAC regarding the "imminent and substantial danger" posed by the "disposal" as required by the RCRA. Instead, the SAC states summarily that the disposal "presented an imminent and substantial endangerment to health and the environment." SAC, ¶¶14, 18, 47, 53. In connection with its motion, CP presented evidence of the toxicity of the benzene-laden aromatic concentrate. Affidavit of Matthew Brodin ("Brodin Aff. II"), Ex. 6 (Expert Report of Ron Frehner and Mark Murphy; Rebuttal to Ken Haberman Expert Report), p. 4 [Docket No. 70-1]. But determining whether there is "imminent and substantial harm" within the meaning of the RCRA is far more complex than stating that the "waste" is hazardous. Rather, a claimant must plead that endangerment threatens to occur immediately or in the future and excludes waste that that no longer presents a danger. <u>Meghrig</u>, 516 U.S. at 485-486 ("this language 'implies that there must be a threat which is present <u>now</u>, although the impact of the threat may not be felt until later.'") (citing <u>Price v. United States Navy</u>, 39 F.3d 1011, 1019 (1994)). "An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately,' Webster's New International Dictionary of English Language 1245 (2d ed.1934), and the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger." <u>Id.</u> at 486. No facts were alleged in the SAC to support a

claim that the disposal presented an "imminent and substantial endangerment" at the time the suit was commenced, now or in the future. Again, as pled the proposed amendments are futile.

Finally, even if CP could overcome the pleading deficiencies described above, this Court agrees with Werner that CP cannot circumvent the RCRA's express limitation on remedies to injunctive relief by using the RCRA as a springboard to obtain damages via common law claims of nuisance or trespass. In the motion hearing, Werner's counsel provided the Court with citations to two cases that supported Werner's position that the RCRA cannot be used to prop up other causes of action—Abreu v. United States, 468 F.3d 20 (1st Cir. 2006) and 325-343 E. 56th St. Corp. v. Mobil Oil Corp., 906 F. Supp. 669 (D.D.C. 1995). The Court allowed CP to respond with a letter brief to these late citations.

In Abreu, the residents of Vieques Island, Puerto Rico sued under the Federal Tort Claims Act ("FTCA") for damages resulting from the United States Navy's operation of a weapons training facility on the island. Id. at 22. The plaintiffs relied on the RCRA to argue that the Navy violated a mandatory RCRA requirement by operating an open burning and open detonation facility without a valid RCRA permit. Id. at 29. The First Circuit affirmed the district court's dismissal of the entire action for lack of subject matter jurisdiction, noting:

> If an action based on the FTCA were allowed here, the district court would effectively be enforcing RCRA under the guise of a FTCA claim. We think that allowing the recovery of damages in a FTCA suit, based on the violation of a mandatory permitting requirement under RCRA, would undermine the intent of Congress to preclude compensatory damages awards for RCRA violations.

> There is, moreover, reason to be concerned that the FTCA suit here was specifically designed to achieve an end run around the strict limitations placed by Congress on private damages actions under RCRA.

Id. at 31.

CP sought to distinguish its case from Abreu, noting that the First Circuit was rejecting plaintiffs' efforts to extract compensatory damages from the government based only on their allegations of the government violated the RCRA, whereas here, CP was merely asserting well-established common law claims of nuisance and trespass. In support, CP cited footnote 10 in Abreu, in which the court observed that the Supreme Court in Meghrig held that the RCRA savings clause "merely preserves causes of action under state law and does not authorize a new substantive RCRA cause of action for damages."[12] Abreu, 468 F.3d at 31, n. 10 (citing Meghrig, 516 U.S. at 487). This Court disagrees. CP's proposed amendment is exactly the "new substantive cause of action" the First Circuit referenced and rejected in Abreu. CP, like the plaintiffs in Abreu, is alleging that Werner's violation of the RCRA constitutes the "wrongful conduct" needed to support its common law claims—claims for which CP is seeking money damages. That was never the intent of the RCRA and in this Court's view, is exactly the "end run" the First Circuit referenced and rejected.

---

[12] The RCRA savings clause referenced by the court in Abreu states in relevant part:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any other relief . . . .

42 U.S.C. §6972(f).

In 325-343 E. 56th Street, plaintiff alleged that the defendants' violations of various provisions of the RCRA regulations constituted negligence per se and entitled it to seek damages for the costs of remediation for petroleum contamination from leaking underground storage tanks ("USTs") on land it had purchased. After analyzing and rejecting a similar claim of negligence per se based on the D.C. Uniform Storage Tank Act ("UST Act"), the court found that a negligence per se claim could not proceed based on the RCRA because it, like the UST Act, was designed to protect the public, rather than any individuals or particular class of people, and "the principle of negligence per se should not apply to situations in which the harm suffered by the plaintiff differs from the harm sought to be protected by the statute." 906 F. Supp. at 687. "[The RCRA] was enacted to protect the public from soil and water contamination, not to protect a certain class of persons seeking to recover monetary damages. None of the RCRA provisions indicate that the class of persons to be protected is any less broad than the entire population of the United States. Therefore, allowing Plaintiff to proceed with its negligence per se claim would be improper." Id. at 688.

At the same time, the court recognized that whether or not a plaintiff could assert a negligence per se claim was "an issue akin to the question of whether a private cause of action exists under a statute." Id. (citations omitted). "In adopting a statutory standard of conduct [in connection with a negligence per se claim], courts are trying to further the underlying policy that the statute seeks to promote." Id. (citations omitted). Explaining that it "found no express or implied private cause of action for money damages under RCRA, and finding a Congressional intent that the RCRA citizen suit provisions serve only to allow private plaintiffs to act as 'private attorney generals'," the

court dismissed plaintiff's negligence per se claim for violations for the RCRA regulations.  Id.

CP correctly pointed out that <u>325-343 E. 56th Street</u> involved a negligence <u>per</u> <u>se</u> claim based on a RCRA violation, and not, as here, nuisance and trespass claims. Based on this difference, CP contended:

> Unlike a negligence <u>per</u> <u>se</u> claim, the breach of a duty to a class of persons is not a prerequisite to the commission wrongful conduct.  <u>Christiansen & Sons</u>, 31 N.W.2d at 275 (violation of federal statute enacted to protect navigable water rights constituted nuisance and trespass wrongful conduct).  As <u>Christiansen</u> recognized regarding nuisance and trespass, "violation of the statute gives the right of action.  Nothing more is necessary if damage accrues. * * * Simple disobedience to the statute brings liability without the existence of other wrongdoing."  <u>Id.</u> (citation omitted).

Letter to Court dated May 8, 2013.

Nonetheless, this Court finds that the plaintiffs in <u>325-343 E. 56th Street</u> were attempting to obtain the same result CP is attempting to achieve here with its claims of nuisance and trespass—using an alleged violation of the RCRA to satisfy the requirement of wrongful conduct as a matter of law to recover a form of relief specifically prohibited by the citizen suit provision of the RCRA.  While the court in <u>325-343 E. 56th Street</u> analyzed the plaintiffs' claims under the negligence <u>per</u> <u>se</u> standard, at the end of the day, it was the court's conviction that it would be improper to allow a claim for money damages to proceed when the RCRA's citizen suit provision expressly prohibited such actions.

This Court reaches the same conclusion.  Through its proposed amendments CP seeks to assert that Werner's violations of the RCRA establish as a matter of law trespass and nuisance and entitles CP to monetary damages for these violations.  The

RCRA does not permit monetary damages to private citizens for violations of the RCRA. Where Congress has expressly foreclosed the use by private citizens of the RCRA to obtain monetary damages for violations of the RCRA, this Court will not permit CP to evade that proscription.

**C.** **Conclusion**

This Court finds that CP is attempting to amend the FAC to include new claims under the RCRA and rejects CP's effort to characterize the claims as "clarifications." CP's motion is untimely; CP was not diligent in seeking to leave to amend; CP unduly delayed in pursuing the motion; and Werner would be extremely prejudiced by allowing the amendment at this late date. Finally, CP's attempt to insert the RCRA into this suit to establish its nuisance and trespass claims is futile. For all of the foregoing reasons, CP's motion is denied.

J.S.M.