UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-1089(DSD/JSM)

Soo Line Railroad Company,
a Minnesota corporation
doing business as
Canadian Pacific,

       Plaintiff,

v.                                                                    **ORDER**

Werner Enterprises,

       Defendant.


    Timothy R. Thornton, Esq., Jonathan P. Schmidt, Esq.,
Matthew R. Brodin, Esq. and Briggs & Morgan, PA, 80 South
Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel
for plaintiff.

    David C. Linder, Esq., Anthony J. Novak, Esq., Mark A.
Solheim, Esq. and Larson King, LLP, 30 East Seventh
Street, St. Paul, MN 55101, counsel for defendant.


    This matter is before the court upon the motion for summary
judgment by defendant Werner Enterprises (Werner) and the motions
to exclude expert testimony by Werner and by plaintiff Soo Line
Railroad Company, doing business as Canadian Pacific (Canadian
Pacific). Based on a review of the file, record and proceedings
herein, and for the following reasons, the court grants in part the
motion for summary judgment and denies the motions to exclude
expert testimony.

**BACKGROUND**

This property-damage dispute arises out of the March 31, 2012, collision between a truck owned by Werner and a train operated by Canadian Pacific.  Early that morning, nonparty Dale Buzzell drove a Werner truck north on U.S. Highway 59, near Plummer, Minnesota. Am. Answer ¶ 11.  Canadian Pacific railroad tracks cross Highway 59 near Plummer.  Nagel Aff. Ex. A, at 0000559.  The crossing is marked with stop lines, crossing signals, cross bucks and other signals.  Id. Ex. B, at 0000001-0000026.

Approximately 1000 feet prior to the crossing, Highway 59 curves slightly.  Novak Aff. Ex. D, ECF No. 94, at 12.  The road straightens 535 feet prior to the crossing.  Id. at 17.  Buzzell approached the crossing as a Canadian Pacific train traveled southeast on the tracks.  Nagel Aff. Ex. A, at 0000559.  All crossing signals were operational as Buzzell approached.  Zerr Aff. ¶ 7.  Buzzell's truck collided with the ninth car of the train, a tanker carrying aromatic concentrate.  Berzinski Aff. ¶ 6.  The collision started a fire that engulfed Buzzell's truck, and Buzzell died at the scene.  Nagel Aff. Ex. A, at 0000559-0000560.  The collision also punctured the tanker, derailed several cars and caused aromatic concentrate to leak onto the tracks and surrounding ground.  Id. at 0000559.  Thereafter, Canadian Pacific funded and directed the reclamation efforts.  See Am. Compl. ¶¶ 17-23.

On May 3, 2012, Canadian Pacific filed suit, alleging that Werner is liable for the cleanup costs based on negligence theories. Thereafter, on August 16, 2012, Canadian Pacific amended its complaint to include allegations of nuisance and trespass. On January 28, 2013, the court denied the pre-discovery motion for summary judgment by Canadian Pacific. Werner now moves for summary judgment, arguing that undisputed evidence demonstrates that Buzzell was medically incapacitated at the time of the collision. In addition, both Canadian Pacific and Werner move to exclude expert witnesses.

**DISCUSSION**

**I.   Preemption**

As a threshold matter, Canadian Pacific argues that the Federal Motor Carrier Safety Act of 1984 (FMCSA) precludes the admission of any rebuttal evidence that Buzzell was medically incapacitated when the truck collided with the train. Specifically, Canadian Pacific argues that the FMCSA regulations governing commercial drivers' medical histories, physical fitness and drug use preempt Werner's state-law arguments rooted in the common law doctrine of sudden incapacitation.

"Under the Supremacy Clause of the Constitution, federal legislation may preempt state law." Symens v. SmithKline Beecham Corp., 152 F.3d 1050, 1053 (8th Cir. 1998); see also Rivera v.

Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) ("Congress may preempt state common law as well as state statutory law." (citations omitted)).  Preemption may be express or implied. Symens, 152 F.3d at 1053.  "An intent to preempt may ... be implied, for example, when federal and state laws directly conflict, when state law stands as an obstacle to accomplishing the purposes of federal law, or when federal law is so pervasive that it reflects an intent to occupy a regulatory field." Id. (citation omitted).  In fields - such as traffic regulation - which the states have traditionally occupied, courts presume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781, 792 (8th Cir. 2010) (citation and internal quotation marks omitted).

### A.   Field Preemption

Canadian Pacific does not dispute that there is no express preemption provision in the FMCSA.  Rather, Canadian Pacific argues that the FMCSA is so pervasive that it regulates the entire field of commercial motor vehicle safety.  In support, Canadian Pacific argues that Congress intended "to occupy the field of driver regulation to the extent of existing [FMCSA] regulations." Visnovec v. Yellow Freight Sys., Inc., 754 F. Supp. 142, 146 (D. Minn. 1990).  The common law theory of driver *incapacitation*,

4

however, is not a part of the field of driver *regulation*.  Indeed, the FMCSA explicitly contemplates the existence of "compatible State regulations, standards, and orders" relating to motor vehicle safety and transportation, demonstrating that it was not intended to entirely displace state law.  49 U.S.C. § 31102(a).  As a result, "Congress did not intend to occupy completely the field of safety regulations for the operation on interstate highways of commercial vehicles but ... contemplated the continued application and enforcement of State rules or regulations."  <u>Specialized Carriers & Rigging Ass'n v. Virginia</u>, 795 F.2d 1152, 1156 (4th Cir. 1986).

**B.   Conflict Preemption**

Canadian Pacific next argues that the common law sudden incapacitation evidence is barred by conflict preemption. Specifically, Canadian Pacific argues that potentially absolving Buzzell and Werner of liability due to Buzzell's alleged medical incapacitation would conflict with the purpose of the FMCSA: to protect the public from accidents caused by commercial drivers' medical emergencies.  For conflict preemption to apply, however, there must be "far greater specificity" in the articulated conflict than a generalized notion of public safety.  <u>Keller v. City of Fremont</u>, 719 F.3d 931, 944 (8th Cir. 2013).  Indeed, it is entirely consistent to encourage compliance with the preventative regulations concerning commercial driving qualifications and

nonetheless observe state common law doctrines in the event of an undetectable medical emergency.   Given the presumption against preemption, Canadian Pacific's argument that the FMCSA preempts evidence of sudden incapacitation is unavailing.

## II.  Expert Testimony[1]

Canadian Pacific and Werner each move to exclude expert testimony.  Canadian Pacific moves to exclude the testimony of Werner's experts Dr. Shannon Mackey-Bojack, Dr. Mark Koponen, Kenneth Haberman and Kenneth Drevnick.  Werner moves to exclude the testimony of Canadian Pacific's experts Jon Cook, Ryan Zukowski, Dr. Brian Konowalchuk, Dr. Thomas Young, Ron Frehner and Mark Murphy.

### A.   Standard

"[T]he admissibility of expert testimony in diversity cases is governed by federal law."  Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) (citation omitted).  Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

---

[1] The court notes that all pre-trial evidentiary rulings are provisional in nature and subject to modification at trial.

> methods; and (d) the expert has reliably
> applied the principles and methods to the
> facts of the case.

Under Rule 702, the court acts as a gatekeeper to determine "whether the witness is qualified to offer expert testimony." Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)).

An expert must possess the "knowledge, skill, experience, training, or education sufficient to assist the trier of fact." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (citation and internal quotation marks omitted). This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree." Id. (citation and internal quotation marks omitted). Further, Rule 702 "require[s] that the area of the witness's competence matches the subject matter of the witness's testimony." Id. at 1101 (citation and internal quotation marks omitted). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id. at 1100-01 (citations and internal quotation marks omitted).

The court must also "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

Schmidt, 557 F.3d at 570 (citing Daubert, 509 U.S. at 589).  The court considers several nonexclusive factors when determining the reliability of an expert's opinion, including:

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the theory has been generally accepted; ... [(5)] whether the expertise was developed for litigation or naturally flowed from the expert's research; [(6)] whether the proposed expert ruled out other alternative explanations; and [(7)] whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686-87 (8th Cir. 2001) (citations and internal quotation marks omitted).  This "flexible and fact specific" inquiry allows the court to "use, adapt, or reject [the] factors as the particular case demands." Unrein, 394 F.3d at 1011 (citation omitted).  The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence.  See Lauzon, 270 F.3d at 686.

### B.  Dr. Mackey-Bojack and Dr. Koponen

Canadian Pacific moves to exclude the expert testimony of Dr. Shannon Mackey-Bojack and Dr. Mark Koponen.  In support, Canadian Pacific argues that the medical testimony regarding a potentially incapacitating cardiac event is preempted by the FMCSA regulations. As already explained, however, the FMCSA regulations do not preempt the presentation of sudden incapacitation evidence.

8

Canadian Pacific also argues that Dr. Mackey-Bojack and Dr. Koponen should not be able to opine on the "cause" of the collision.  Specifically, Canadian Pacific argues that Dr. Mackey-Bojack and Dr. Koponen are not experts on federal trucking regulations and, as such, are not qualified to testify as to whether failure to follow such regulations contributed to the collision.  The court declines to impose such a far-reaching limitation on the testimony.  Dr. Mackey-Bojack and Dr. Koponen may testify as to their medical expertise, but may not testify to subjects - including the federal regulations - that are outside such expertise.  See Robinson, 447 F.3d at 1100 ("[T]he area of the witness's competence [must] match[] the subject matter of the witness's testimony." (citation and internal quotation marks omitted)).  As a result, the motion to exclude the testimony of Dr. Mackey-Bojack and Dr. Koponen is denied.

**C.    Haberman**

Canadian Pacific next moves to exclude the testimony of Kenneth Haberman.  Specifically, Canadian Pacific argues that Haberman's expertise extends only to remediation of legacy environmental sites rather than emergency environmental sites.  Haberman, however, has thirty years of experience in the environmental field on issues including remediation and one emergency response.  See  Solheim Aff. Ex. C, ECF No. 100 at 1; Haberman Dep. 3:17-19.   "Only if the expert's opinion is so

fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (citations and internal quotation marks omitted). Here, Haberman's proposed testimony is not "fundamentally unsupported." Moreover Canadian Pacific will have the opportunity to cross-examine Haberman regarding his credentials and experience at trial, and it is "within the province of the jury to evaluate issues of fact and credibility." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006).

Canadian Pacific also argues that Haberman's methodology failed to take into account (1) Minnesota law regarding emergency response and (2) negotiations between Canadian Pacific and the Minnesota Department of Transportation regarding the remediation. See, e.g., Minn. Stat. § 115E.03, subdiv. 1; Haberman Dep. 21:8-22:11. "Disagreements about methodology and technique" used by experts, however, "go to the weight the jury should give the evidence rather than its admissibility." Shoaf v. Am. Way Transps., Inc., 47 F. App'x 780, 782 (8th Cir. 2002) (per curiam) (citation omitted). As a result, Canadian Pacific's motion to exclude Haberman's testimony is denied.[2]

---

[2] Canadian Pacific also argues that the court's April 15, 2013, protective order precludes Haberman's testimony. That order read, in part, "Werner will be precluded from introducing at trial any of its own employees to testify about whether Werner would have

(continued...)

### D.   Drevnick

Canadian Pacific next moves to exclude the expert testimony of Kenneth Drevnick.   Canadian Pacific argues that Drevnick, an accident reconstructionist, is not qualified to offer medical opinions regarding the cause of the collision.   Drevnick, however, states that he will not offer medical opinions.   Drevnick Dep. 41:9-13.   Rather, Drevnick has incorporated the medical examiner's report into his accident reconstruction.   Id. at 46:4-17.   Such reliance is proper under the Federal Rules of Evidence, which allow an expert to "base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed."   Fed. R. Evid. 703 (emphasis added).   Here, medical examiners' reports are documents that are reasonably relied upon by accident reconstructionists.   See Ratliff v. Schiber Truck Co., 150 F.3d 949, 955 (8th Cir. 1998) (finding that police report is "reasonably relied upon by accident reconstructionists in forming their opinions." (citation omitted)).   As a result, the motion to exclude Drevnick as an expert is denied.

---

[2](...continued)
handled the clean-up differently."   ECF No. 65, at 3.   Haberman, however, is not an employee of Werner, and the possibility of expert testimony regarding clean-up was expressly contemplated by the April 15, 2013, order.   See id. at 2.   As a result, Canadian Pacific's argument is unavailing.

### E.    Cook

Werner moves to exclude the testimony of Canadian Pacific's trucking safety expert, Jon Cook.  Werner argues that Cook's proposed testimony will not assist the jury in determining any issue of consequence because (1) the application of the federal regulations is not in dispute and (2) Cook does not offer an opinion as to why the collision occurred.  See Schmidt Aff. Ex. 8, ECF No. 97, at 2.  The court disagrees.  The court concludes, at this stage, that Cook's expertise in federal trucking regulations may potentially be relevant to Canadian Pacific's negligence claim, as the regulations may inform the duty of care owed by Buzzell.  See Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2009) (applying Minnesota law).  Moreover, any alleged gaps or deficiencies in Cook's methodology may be explored during cross-examination.  See Shoaf, 47 F. App'x at 782.  As a result, the motion to exclude Cook's expert testimony is denied.

### F.    Rebuttal Experts

Werner next moves to exclude the testimony of Ryan Zukowski, Dr. Brian Konowalchuk and Dr. Thomas Young, arguing that (1) the expert disclosures were untimely and (2) their opinions are otherwise inadmissible.

#### 1.    Compliance with Rule 26

Specifically, Werner argues that these experts are used to establish Canadian Pacific's case-in-chief and should have been

disclosed by the initial expert deadline, rather than by the rebuttal expert deadline.  Canadian Pacific responds that the experts are proper rebuttal witnesses because they will testify as to the evidence of incapacitation that Werner proffers to rebut Canadian Pacific's negligence per se claim.  Cf. Fed. R. Civ. P. 26(a)(2) advisory committee's note ("[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue.").

Even if these witnesses are not proper rebuttal witnesses, however, exclusion is not warranted.  "When a party fails to provide information or identify a witness in compliance with Rule 26 ..., the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case."  Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (citations omitted).  The court "may exclude the information or testimony ... unless the party's failure to comply is substantially justified or harmless."  Id. (citation omitted).  "When fashioning a remedy, the district court should consider ... the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."  Id. (citations omitted).  "[T]he

exclusion of evidence is a harsh penalty and should be used sparingly." Id. (citation and internal quotation marks omitted).

Here, the court finds that any failure of Canadian Pacific to comply with Rule 26 with regards to these witnesses is harmless. Any delay in disclosure of experts was minimal, as the expert reports were filed within the forty-five days prescribed for rebuttal experts in this case. See Fed. R. Civ. P. 26(a)(2)(D)(ii); ECF No. 48, at 2. As a result, there has been no prejudice, as Werner has "had a sufficient opportunity to depose" the experts following their identification prior to trial. Jenkins v. Med. Labs. of E. Iowa, Inc., 880 F. Supp. 2d 946, 956 (N.D. Iowa 2012). Further, the proposed expert testimony relates to an important issue in the case: whether Buzzell's alleged incapacitation rebuts the presumption of negligence established by violation of the traffic statute. As a result, the court declines to exclude the purportedly-untimely expert testimony.

### 2. Zukowski

Werner further argues that Zukowski's testimony should be excluded on substantive grounds. Specifically, Werner argues that Zukowski's report offers only undisputed facts and concludes that "[n]o one can know for certain exactly what caused Mr. Buzzell to drive into the side of a train." Novak Aff. Ex. D, ECF No. 94, at 17. Werner argues that such a conclusion amounts to improper speculation. The court disagrees. Zukowski, an accident

reconstructionist, issued a thorough eighteen-page report analyzing the collision.  See id.  His ultimate conclusion, acknowledging his inability to conclusively determine causation, does not render the report inadmissible.  Werner also argues that Zukowski did not evaluate the medical evidence in formulating his report.  As already explained, however, disagreements about expert methodology go to credibility, rather than to admissibility.  Shoaf, 47 F. App'x at 782.  As a result, the motion to exclude Zukowski's testimony is denied.

### 3.  Dr. Konowalchuk and Dr. Young

Werner also argues that the testimony of Dr. Konowalchuk and Dr. Young should be excluded on substantive grounds.  Specifically, Werner argues that the medical experts do not reach a conclusion as to the most likely cause of the collision, but instead offer speculation that would confuse and mislead the jury.  Drs. Konowalchuk and Young, however, criticize the scientific methodology of Werner's experts and testify that *nobody* may testify to a reasonable degree of medical certainty as to the cause of the collision.  See Novak Aff. Ex. E, ECF No. 94, at 11; id. Ex. C, at 3.  Such criticism of opposing expert methodology is proper under the Rules of Evidence.  See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc., 829 F. Supp. 2d 802, 835 (D. Minn. 2011).

Werner also argues that Drs. Konowalchuk and Young did not examine Buzzell's heart tissue slides.  In their reports, however,

Drs. Konowalchuk and Young assumed that Werner's expert analysis of the heart tissue slides was accurate.  See Novak Aff. Ex. E, ECF No. 94, at 2; id. Ex. C, at 2.  Moreover, as already explained, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility ... [unless] an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury." Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995) (citations and internal quotation marks omitted).  Here, though the medical experts did not examine the heart tissue, their opinions are not "fundamentally unsupported."  As a result, the motion to exclude the expert testimony of Dr. Konowalchuk and Dr. Young is denied.

G.  **Frehner and Murphy**

Finally, Werner moves to strike the joint damages report of Ron Frehner and Mark Murphy.  Werner argues that Frehner and Murphy submitted one joint expert report for their expert testimony, in contravention of Rule 26, which provides that an expert witness must disclose "a complete statement of all opinions *the witness* will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(I) (emphasis added).  Specifically, Werner argues that the expert report does not comply with Rule 26 because it does not articulate the division of labor between Frehner and Murphy. Werner, however, points to no authority that would warrant the harsh penalty of excluding the report and testimony. See Adams v.

16

United States, No. 4:CV 03-49-BLW, 2011 WL 2144574, at *1 (D. Idaho
May 29, 2011) (noting that "the Rule contains no bar to filing a
joint report signed by two experts").  As a result, the court
denies the motion to exclude the testimony of Frehner and Murphy.

**III.  Summary Judgment**

    **A.   Standard of Review**

    "The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
A fact is material only when its resolution affects the outcome of
the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A dispute is genuine if the evidence is such that it ould
cause a reasonable jury to return a verdict for either party.  See
id. at 252.

    On a motion for summary judgment, the court views all evidence
and inferences in a light most favorable to the nonmoving party.
See id. at 255.  The nonmoving party, however, may not rest upon
mere denials or allegations in the pleadings but must set forth
specific facts sufficient to raise a genuine issue for trial.  See
Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute
exists — or cannot exist — about a material fact must cite
"particular parts of materials in the record."  Fed. R. Civ. P.
56(c)(1)(A).  If a plaintiff cannot support each essential element

of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

### B. Negligence

Werner argues that summary judgment is warranted on the negligence claim. In its previous motion for summary judgment, Canadian Pacific argued that Buzzell's violation of Minnesota traffic statutes constituted negligence per se. "Negligence per se is a form of ordinary negligence that results from violation of a statute." Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981). Canadian Pacific argued that Buzzell was negligent per se as a result of his violation of Minnesota Statutes § 169.26, which provides that "when any person driving a vehicle approaches a railroad grade crossing ... the driver shall stop the vehicle not less than ten feet from the nearest railroad track and shall not proceed until safe to do so." Minn. Stat. § 169.26, subdiv. 1(a).

Although the court previously declined to grant summary judgment for Canadian Pacific on this issue, the court noted that the violation constitutes prima facie evidence of negligence. ECF No. 45, at 6; see Minn. Stat. § 169.96(b). In other words, upon the showing by Canadian Pacific of the violation, Werner may adduce "evidence tending to show a reasonable ground for such violation." Olson v. Duluth, M.&I.R. Ry. Co., 5 N.W.2d 492, 496 (Minn. 1942).

Here, Werner has adduced medical evidence analyzing Buzzell's heart tissue, which, according to Werner's experts, is consistent with Buzzell having an "acute cardiac event" near the time of the collision. Koponen Aff. ¶ 7; <u>see also</u> Solheim Aff. Ex. A, ECF No. 42, at ¶ 9.

Werner argues that summary judgment is warranted given such evidence. The court disagrees. In general, "[w]here there is evidence which tends to establish excuse or justification, the question of whether there was negligence is for the jury." <u>Gertken v. Farmers Elevator of Kensington, Minn., Inc.</u>, 411 N.W.2d 550, 554 (Minn. Ct. App. 1987) (citation omitted). When the "evidence rebutting a prima facie case of negligence is of such a nature that the minds of reasonable men cannot differ about it," however, "it is incumbent upon the court to determine the issue of negligence as a matter of law." <u>Krafft v. Hirt</u>, 110 N.W.2d 14, 18 (Minn. 1961). This is not such a case. Werner's medical experts testify only that a "heart attack is the *most likely* cause for the truck/train collision," Koponen Aff. ¶ 16 (emphasis added). Further, Werner's medical experts testify that "it is *more likely than not* that Mr. Buzzell was suffering from an acute cardiac event at the time of the collision." Solheim Aff. Ex. A, ECF No. 42, at ¶ 19 (emphasis added). Such testimony does not, as Werner contends, conclusively establish that Buzzell was incapacitated at the time of the collision. Moreover, Werner's medical experts testified that

Buzzell's heart tissue exhibited clotting that was at least three days old and that they could not pinpoint when the incapacitating heart occlusion occurred.  Mackey-Bojack Dep. 13:1-3, 35:22-28 Given the lack of certainty regarding the supposed incapacitation, a reasonable jury could find that Buzzell was not excused from complying with the statute and that Buzzell was negligent.[3]  As a result, summary judgment is not warranted.

### C.   Trespass

Werner next argues that summary judgment is warranted on the trespass claim.  Under Minnesota law, "a trespass is committed where a plaintiff has the right of possession to the land at issue and there is a wrongful and unlawful entry upon such possession by defendant."  Johnson v. Paynesville Farmers Union Coop. Oil Co., 817 N.W.2d 693, 701 (Minn. 2012) (citations and internal quotation marks omitted).  In other words, intent is required for trespass liability.  See id. ("[T]he tort of trespass is committed when a person intentionally enters or causes direct and tangible entry upon the land in possession of another." (citation and internal quotation marks omitted)).  Canadian Pacific, however, has adduced

---

[3] Even if Werner had conclusively established facts excusing Buzzell from compliance with the traffic statute, Canadian Pacific could attempt to establish negligence under other theories.  See Krafft, 110 N.W.2d at 18 (noting that "[w]here the violator has met his burden of producing evidence ... the trial proceeds as if the prima facie case created by statute never existed.  His conduct then must be examined in the light of the ordinary tests applicable to negligence actions.").

no evidence to suggest that Buzzell was acting with intent when his truck collided with the train.   Rather, Canadian Pacific argues that Buzzell (1) intentionally ignored his cardiac symptoms and (2) intentionally withheld his history of fatigue from his certifying physician.   Mem. Opp'n, ECF No. 96, at 24.   Such arguments, while potentially relevant to a negligence claim, do not demonstrate intent for the trespass claim.   As a result, no reasonable jury could find that Buzzell was acting with the requisite intent, and summary judgment is warranted on the trespass claim.

### D.   Nuisance

Finally, Werner argues that summary judgment is warranted on the nuisance claim.   Specifically, Werner argues that a single event, such as the collision, cannot constitute a nuisance. Minnesota courts have not squarely addressed whether a single act can constitute a nuisance.   Thus, the court "must predict how [the Minnesota Supreme] Court would decide this unresolved issue of state law."   Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 715 (8th Cir. 2004) (citation omitted).

Under Minnesota law, "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance."   Minn. Stat. § 561.01.   Despite this broad language, Minnesota courts generally

observe, in dicta, that an actionable nuisance must be of a recurring or continuing nature. See Dorman v. Ames, 12 Minn. 451, 456 (Minn. 1867) (noting that nuisance "differs from trespass, which is a single act" (citations omitted)); Wendinger v. Frost Farms, Inc., 662 N.W.2d 546, 552 (Minn. Ct. App. 2003) ("[A] plaintiff who presents evidence that the defendant intentionally *maintains a condition* that is injurious to health, or indecent or offensive to the senses, or which obstructs free use of property, states an actionable claim in nuisance." (emphasis added)). Such a conclusion comports with the majority of jurisdictions that hold that a single act or event generally cannot constitute a nuisance. See Sanders v. Norfolk S. Ry. Co., 400 F. App'x 726, 729 (4th Cir. 2010) (unpublished per curiam) (applying South Carolina law); Kostyal v. Cass, 302 A.2d 121, 125 (Conn. 1972); Trussell Servs., Inc. v. City of Montezuma, 386 S.E.2d 732, 733 (Ga. Ct. App. 1989). As a result, the court holds that a single event such as the collision cannot form the basis of a nuisance claim. Here, the alleged nuisance - the collision which punctured the train car and spilled aromatic concentrate - was neither recurring nor continuing and was not a condition maintained by Werner. Therefore, summary judgment is warranted on the nuisance claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motion for summary judgment [ECF No. 81] is granted in part, consistent with this order;

2.    Canadian Pacific's motion to exclude expert testimony [ECF No. 85] is denied;

3.    Werner's motion to exclude expert testimony [ECF No. 79] is denied.

Dated:  March 31, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court

23